Once more unto the breach, Your Honors, may it please the Court continually. Oh, wait a minute. You're here twice, aren't you? Yes, sir. No prejudice, of course. Well, and I'd like to note for the record that I'm going to attempt to reserve three minutes, and we'll see if that's more successful than my last effort at five. But sometimes it's our fault. We keep questioning you, and you'd like to sit down. If we keep you a little longer in your opening, we'll let you make up for it. I thank the Court. Hopefully, again, I don't wear out my welcome during it. This case implicates some of but not exactly the same issues as the Paxos case. That's why, for example, it was identified as potentially related in our submissions but not as directly related. They were not coordinated below. The plaintiffs in both of them, although commonly represented by myself and my colleagues, are not affiliated. And the underlying facts are slightly different. However ---- Same defendant, right? Or aspect of Mr. Bissi is the 49% owner of ESSA. That's correct, Your Honor. And ESSA is named as a defendant and was in the process of being served by the Hague Convention when the district court ruled on Mitsubishi's motion to dismiss for the Act of State Doctrine, which brings me to the opening, finally, after some hemming and hawing. This is not a case of first impression, but it's a case of half impression or, if we all wanted flashbacks to Bush v. Gore, of hanging Chad. No formal statement on the contours of the Act of State Doctrine, embodying or excluding a commercial activity exception, has ever been issued in a binding ruling by the Supreme Court or this Court. A plurality, however, of the Supreme Court in the Dunhill case did, in fact, endorse such an exception for both logical and legal reasons. I believe that this case presents an excellent opportunity for this Court to make that final pronouncement. It's been deferred in other instances because of the acts involved and the challenges being made, but here we have, once again, the quintessential private act, a commercial contract, which, in this case, the district court even affirmatively noted, would have been a commercial activity under the Foreign Sovereign Immunities Act in the ruling below. Once again, we have the situation of what the doctrine is intended to protect. Unlike the Foreign Sovereign Immunities Act, which is a creature somewhat of statute and designed to, in effect, the policy pronouncements of the State Department regarding when and where a foreign sovereign can be sued, the Act of State doctrine is an equitable doctrine that recognizes the separation of powers between Article III courts, such as the district court or this court, and the executive, which is charged with plenary power in the conduct of foreign affairs. As a result, the analysis of this doctrine focuses specifically upon the impact of which a ruling by a court on an issue would have on international relations. And it has to have a negative impact. That's the doctrine. From that comes the inevitable conclusion that, as we've seen in the cases, it's not the place of a United States court to interfere with the executive's foreign relations prerogatives or to pass judgment upon the acts of a foreign nation. And so when we see all of the Act of State cases, they involve matters such as expropriation of resources, like the nationalization of oil fields, the seizure of goods, attempts to sue over the issuance or denial of a license, quintessentially sovereign acts, which are committed solely to a government that no private entity could do. By contrast, here we have a contract for the sale of salt that's been extracted. It's a commodity that exists, despite the efforts of Mitsubishi to cast this as an explicit natural resources extraction case. It's not. The salt has been mined, or in this case evaporated, and is injected into the stream of commerce by the company. It's not. I mean, salt itself is a natural resource that is, I think, quintessentially part of the country's rights, and that would include rights to exploit. And Mexico chooses, or ESSA, to distribute the salt exclusively through Mitsubishi. What's wrong with that? Well, I think that gets to the distinction that's important for the resolution of this case, Your Honor. If this case were challenging Mexico's mining concessions, or in this case evaporation concessions to the salt, that would be a case where the exploitation of Mexico's natural resources would be being challenged, and would be within the act-of-state doctrine in our view. However, those concessions were issued in the 1950s to a fully private ESSA, before the Mexican government acquired its 51 percent stake. They continue today. Mexico has made the determination that the salt will be commercialized and sold. That concession made no mention of to whom, and again I mention that ESSA, at its outset was a private corporation owned by an American, Daniel Ludwig. So the question then becomes, is the breach of a contract, or the downstream conduct of Mitsubishi, a private corporation in the United States, in furtherance of the sale of that salt, within the bounds of the ambit of exploitation of natural resources? We believe the answer is no. The line I draw is whether it has to do with the sovereign determination, whether someone may extract or may exploit these resources. And we see this, a lot of the act-of-state cases deal with OPEC and oil extraction. The decision to pull oil out of the ground, or to do it through a state-owned enterprise, would be a sovereign act. Let me ask you, if this were the first contract, and the parties were who they are at this point, in other words the Mexican sovereign owned a majority of the shares, and this were the first contract, would you say that the act still did not apply because it's a sale rather than a development? When Your Honor says the first contract, you're referring to the concessions granted? But you said the contract was 40 years ago. Right, the concessions that were originally granted to ESSA. I'm saying, and at that point you say the Mexican government did not have a majority. Correct. Suppose the contract, the first contract, instead of 40 years ago, was today, and the Mexican government did have a majority interest. Would you still say the act-of-state doctrine didn't apply because it's the sale rather than the mining? That would be correct, Your Honor, and that's the distinction that I draw. Okay, so it depends on, your case depends on that distinction. Right, it depends on the character of the act that's at issue in the case. So, for example, to- Are there cases that say that where mining would fall within, sale would not? There are no cases that say that mining falls within the sale or not, but the distinction I would draw again is, do you have the state's authorization to go construct a salt flat or dig a mine and pull natural resources out of the ground, versus once you have that state's permission, what do you do with them? This case is the latter. Let me ask a question. Do you agree or disagree with what I'm about to say? Do you agree that sea salt is explicitly included within the scope of resources that are exclusively vested in the Mexican government based on generic documents from the Constitution of the United Mexican States, such that when we're talking about sea salt, we are by necessity talking about something that belongs to the government of Mexico? I see no reason to dispute that, and I don't believe that's determinative on this case. I don't think that this case raises any issue about whether the Mexican state or any state has the authority to determine not just the exploitation of the natural resources within its borders, but all manner of conduct within its borders. The question is, is once that state has made the determination that this resource will be extracted and exploited for commercial sale, how far does the protection go? Perhaps it goes far enough to protect ESSA's decision to sell to Mitsubishi, but when ESSA makes the decision to sell to other companies, does it protect those? When Mitsubishi engages in acts in the United States to stifle competition and prevent other entities from competing in the solar sea salt market, does the act-of-state doctrine protect Mitsubishi's conduct? The answer to those is no. Under the extraterritorial doctrine, which is an exception to the act-of-state, and also, again, because the tenuous link between an original extraction of resources and their ultimate injection into the commercial marketplace is not enough to invoke the act-of-state doctrine. The Mitsubishi brief talks about how this isn't a case of the sale of paperclips, and the example sticks in my mind. Paperclips are usually made out of aluminum or some other terrible metal, actually probably iron because they're magnetic and I play with them. Be that as it may, the sale of paperclips, even in their own example, doesn't implicate the act-of-state doctrine, but that metal must have been mined at some point. And ultimately, mining rights always flow back to the sovereign. That's why, even in the United States, whenever you look at a title to land, it discusses whether or not you're also obtaining title to the mineral rights. It's subject to permitting and regulation by the EPA and the Department of the Interior. So too in Mexico. But once the Mexican government has granted rights to extract salt, and then the salt exists in the commercial market space downstream, the act-of-state doctrine no longer is at play. If the Mexican government mined however much salt it did, but decided that it wanted it sold in particular ways, why isn't that the same governmental interest in the use of the salt? If it said we only want to sell X amount in any year, and we only want to sell it in Europe, if that were a policy decision of the Mexican government, wouldn't that relate to the use of its natural resources? In some respects, I believe Your Honor is correct. However, I think that this gets to a very somewhat esoteric distinction in Mexican law between the Mexican state and state-owned enterprises, such as the peristatal is the legal term of our entities as ESSA. The state draws a distinction between them. So while under the Foreign Sovereign Immunities Act, which we have been discussing, a state-owned enterprise is considered an instrumentality of a foreign state, under Mexican law ESSA and the government are two separate entities, although in some higher forms of alignment in some respects. But Mexico owns 51 percent of ESSA. Doesn't that mean that it's in furtherance of the acts of the state whenever ESSA acts? Again, I believe that the answer to that, even under Mexican law, is no, Your Honor, because it does draw a distinction. It is not, for example, the Mexican Department of the Interior as a governmental agency or department acting. It's a governmental-owned corporation, which is granted a distinct set of legal rights. Well, it has controlling ownership. Correct. But even with the controlling ownership, under Mexican law itself, a distinction is drawn. And some of that law was discussed in the record because, once again, there were. . . But we have precedent saying ESSA is a foreign state. Under the Foreign Sovereign Immunities Act, which has a definition of the instrumentality of a foreign state, which explicitly extends to state-owned corporations. The act-of-state doctrine is not bound by the Foreign Sovereign Immunities Act. I know it's not bound by it, but doesn't foreign state mean the same thing when you use it in each of those doctrines? I believe that the difference comes in the use of the Foreign Sovereign Immunities Act term and instrumentality of a foreign state, which goes beyond the mere existence of a sovereign into things like state-owned corporations, sovereign wealth funds, and so forth. That is a distinction that, even in the Foreign Sovereign Immunities Act, is drawn, although it does ultimately extend the protections of the Foreign Sovereign Immunities Act to those instrumentalities. It does not draw a bright-line equivalence, Your Honor. With that, I have 35 seconds that I'd like to save for a rebuttal. We'll give you a little time. May it please the Court. Good morning, Your Honor. I'm Charles David Al, speaking on behalf of the Mitsubishi Defendant, Apolise. With the Court's indulgence, I'll briefly summarize our argument and then respond to the particular arguments the counsel for the plaintiffs has made. In our view, this case falls squarely within the abundant precedent in this Court and elsewhere that antitrust lawsuits challenging the manner in which a foreign government or a government-controlled entity seeks to profit from its natural resources are governed by the act-of-state doctrine. It's not merely the manner in which and whether they choose to extract resources or not. The language from this Court's decision in the International Association of Machinists includes how it chooses to profit from those natural resources. The cases that were brought against OPEC and foreign-controlled oil companies remain good law. They're on point, and they dictate the outcome here. And it's notable that the plaintiffs have no case law support for their contrary arguments. Just to summarize the facts, the Mexican government has chosen to exploit its natural resource of sea salt in a manner similar to the way many developing countries exploit their resources. They enter arrangements with companies that are capable of providing the necessary expertise, capital, and manpower to extract and mine the sea salt as other countries do with respect to other natural resources. Mitsubishi, in turn, is compensated for making the necessary investment and dedicating the necessary resources in part through its ability to distribute the finished product. Plaintiffs are challenging the ability of Mexico to profit from its sea salt through its chosen means. Each of their claims attacks that. The Act of State Doctrine has two core components. First, an official act of a foreign sovereign performed in its own territory, and second, that the relief would declare the act invalid. Those conditions are all satisfied here. ESSA's majority owned and controlled by the Mexican government, the decision how to profit from a natural resource is a classic sovereign act, and the challenged actions flowed from that decision. The act by ESSA and Mitsubishi, as well as the contract that ESSA had with INAFUD, were performed in Mexico, and this lawsuit seeks to declare those actions illegal and invalid. Straightforward application of the law. Plaintiffs make a number of arguments. The one that the court spent the most time considering here, and I think it is the key argument, is whether this is commercial activity, whether the sale of sea salt can be separated, can be segregated from the other components of this integrated agreement and treated as an independent act that's excluded from the Act of State Doctrine. There's a good deal of law on this point. While they claim the decision is whether to exploit a sovereign activity, but actually exploiting its commercial, the case law says otherwise. Indeed, this court in the International Association of Machinists case addressed the point. It said the Act of State Doctrine precludes courts from, and I'm quoting, instructing a foreign sovereign to alter its chosen means of allocating and profiting from its own valuable natural resources. Those quotes, allocating and profiting from. Mexico's decision of the means by which it chooses to profit from its sea salt is exactly what we are talking about and exactly what plaintiffs are trying to say does not come within the Act of State Doctrine. How far does that principle go? How downstream into the market does that, in your mind, does the Act of State Doctrine cover the distribution and sales of the sea salt? I would say to the next seller by Mitsubishi. So, for example, to take the paperclip analogy, I'm not saying that if a chef chooses to use too much sea salt, that can be tracked back and will come within the Act of State Doctrine. But the contours of this arrangement that Mexico has agreed to is exclusive sale, according to the complaint, by Mitsubishi. And that's as far as the claim in this case goes. So the court doesn't need to resolve what would happen if, somewhere further down the line, a later seller had an issue. I would be surprised if such a case would come within the Act of State Doctrine. But here, looking at the arrangement that's being challenged, that is, exclusive distribution as part of this arrangement, that comes within the core here, and the court needn't go any further than that in extending the Act of State Doctrine. Now, one of the things plaintiffs argued was that in international association of machinists, the court was dealing only with price fixing, but that consisted only of production limits. So he said that doesn't really extend to the sale of the product. Well, that's actually not accurate. If the court will look back at that opinion, not only were production limits part of the case, but also royalty payments, that is, amounts that were charged to the companies that were extracting it. Once again, we're talking about conditions associated with the sale of the oil. In Clayco, the court described the activity as granting an oil concession, which is, in some respects, functionally similar to what we have here. In both instances, the conduct involved not only a decision whether to permit exploitation, but the economic terms that would govern the sale of the oil. Finally, plaintiff's distinction makes no sense, in addition to being precluded by the precedent. They're saying, we agree, courts can't tell Mexico whether to exploit its sea salt, but the courts should tell Mexico how it can do so, that is, that it cannot use the normal arrangement that developing countries use to exploit their natural resources. We're dealing with an integrated decision here. Let me turn very quickly to a few other arguments that plaintiffs have emphasized. In their reply brief, they argue at some length that Mitsubishi was obligated to obtain input from the State Department, opining whether this case would adversely affect relations with Mexico. I would cite the court to the Supreme Court's decision in the Banco Nacional de Cuba v. Sabatino case, where the Supreme Court addressed exactly that argument and rejected it. The respondents argued that the active state doctrine should be applicable, and I quote, only when the executive branch expressly stipulates that it does not wish the court to pass on the question of validity. The Supreme Court rejected the position, saying the State Department may wish to refrain from taking a position, and anyway it's questionable whether the examination of validity by the judiciary should depend on an educated guess by the executive. What's more, in none of this court's cases applying the active state doctrine has it imposed such a requirement or, for that matter, received such input. Second argument they make, they argue that Mexican commercial law applies and therefore this is a commercial act under Mexican law. The answer to that is it's irrelevant. The active state doctrine addresses which branch of the United States government should handle matters involving the sovereignty of a foreign nation. Should it be the executive branch? Should it be the judicial branch? The test turns on whether there's been an official act and whether the U.S. courts are being asked to declare it invalid under the governing authority. It doesn't turn on which body of law the foreign country itself would use to resolve a breach of contract action, which incidentally this case is not. Plaintiffs cite no active state authority, and we have found none, even considering what domestic law the foreign country would apply. Finally, with respect to the extraterritorial exemption that plaintiff has identified, we believe that argument has no basis whatever. As this court held in the Chakosh case, that doctrine applies when a foreign nation seeks to confiscate assets held in the United States. It's understandable in that circumstance that the active state doctrine would not apply because you're dealing with an action that purports to confiscate assets held in the United States. And that's as far as any of the cases applying the extraterritoriality exception go. It doesn't apply merely because the action taken wholly within the foreign country has an effect in the United States. If it did, every single one of the OPEC cases would have come out the other way from the way this Court and other courts have decided it. In sum, this case falls squarely within the terms of the active state doctrine and this Court's longstanding precedent regarding the sovereign nation's, foreign nation's chosen means of allocating and profiting from its valuable natural resources, and the case should therefore be affirmed. Unless the Court has any questions, I have nothing further. Thank you. Thank you. Even talking as fast as the Court would disapprove of, I think I'm going to run out of time, so I beg the Court's indulgence. We'll give it a few minutes. This case, the ultimate issue in its determination is whether Mitsubishi, a private corporation, is entitled to evade compliance with United States law for its actions in the United States simply because it asserts that Mexico has compelled it to do so or wants it to do so. That is the core issue that this Court is faced with on this active state doctrine question. It's important to note that the active state doctrine was not asserted by ESSA in the Paxos case that we were just discussing. It has never been an issue from the United States Department of State, unlike many other cases such as the in-rate vitamin C case from the Second Circuit, or even in this Court's case, Sarai v. Rio Tinto, where actually the State Department changed its position on whether or not the Alien Tort Claims Act case could proceed. It started off opposed, and then it said that later on there was no impediment, and it actually desired the case to proceed in our courts. Finally, we have the extraterritoriality exception, which Appellee's Counsel wishes to limit solely to efforts by a foreign nation to seize assets in the United States. It's broader than that. The point here is that this doctrine is to permit courts to abstain from passing on the acts of a sovereign in execution of its sovereign actions within its own territory. That is not what the court would be called upon to do here. And finally, the very last point, Your Honors, and I beg your indulgence for this time, is the Banco Nacional case, which Counsel pointed to, about how it is not a requirement that the Department of State answer any call or weigh in on every single one of these cases. That's correct. The Supreme Court did say so. But it did also say that it has to be more than an educated guess. It even used the term. Here we have nothing but speculation as to the harm to U.S.-Mexico relations by virtue of the case proceeding. Speculation is not enough to invoke the doctrine and dismiss the suit. Thank you for your indulgence, Your Honors. Thank you. Thank you both very much. The case is argued, will be submitted.
judges: Reinhardt, Wardlaw, Daniel